IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **SUCXESS LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**COMMA.AI, INC.,**<br><br>**Defendant.** | Case No.<br><br>**Jury Trial Demanded** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sucxess LLC, by and through the undersigned counsel, files this Complaint for patent infringement against Defendant comma.ai, Inc., and in support states:

### Parties

1. Plaintiff Sucxess LLC ("Sucxess") is a limited liability company organized and existing under the laws of the State of Michigan and having its principal place of business in Birmingham, Michigan.

2. Defendant comma.ai, Inc. ("comma.ai") is a corporation organized and existing under the laws of the State of Delaware and having a place of business in San Diego, California. comma.ai's registered agent is Incorporating Services, Ltd., 3500 South DuPont Hwy., Dover, Delaware 19901.

### Jurisdiction and Venue

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. §§ 271. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant at least because Defendant is a corporation organized under the laws of the State of Delaware.

5. Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400(b).

## The Patents-in-Suit

6. U.S. Patent No. 10,454,707 (the "'707 Patent") was duly and legally issued on October 22, 2019. Claim 20 of the '707 Patent was upheld by the Patent Trial and Appeal Board of the United States Patent and Trademark Office in an *inter partes* review proceeding. A true and correct copy of the '707 Patent is attached as **Exhibit A**.

7. U.S. Patent No. 11,153,116 (the "'116 Patent") was duly and legally issued on October 19, 2021. The '116 Patent is part of the same patent family as the '707 Patent. A true and correct copy of the '116 Patent is attached as **Exhibit B**.

8. Sucxess is the assignee of all right, title, and interest in and to the '707 Patent and the '116 Patent (together, the "Patents-in-Suit"). It has the exclusive right to prosecute the present action for infringement of the Patents-in-Suit.

9. The Patents-in-Suit are valid and enforceable.

10. The Patents-in-Suit disclose a unique and valuable method, apparatus, and system for retrofitting vehicles. The inventions disclosed in the patents encompass vehicles retrofitted as autonomous vehicle prototypes.

11. Defendant has been aware of the Patents-in-Suit and its infringement of the Patents-in-Suit since no later than June 16, 2022, when Defendant received a letter from Plaintiff identifying the patents and setting forth its infringement allegations.

12. The requirements of 35 U.S.C. § 287(a) are satisfied at least because Defendant received actual notice of the Patents-in-Suit and its infringement on June 16, 2022.

**Count I – Infringement of the '707 Patent**

13.     Plaintiff restates and incorporates by reference the foregoing allegations.

14.     This case concerns automobiles retrofitted with Defendant's aftermarket driver assistance kit ("the Accused Vehicles").

15.     The Accused Vehicles meet the limitations of claim 20 of the '707 Patent at least as follows:

   a.   Claim 6, from which claim 20 indirectly depends, describes "[a] vehicle." The Accused Vehicles are vehicles, specifically, automobiles.

   b.   The vehicle in claim 6 comprises "a factory-installed first apparatus configured to generate an electrical signal." The Accused Vehicles include such a factory-installed first apparatus, for example, in the form of a radar sensor or an advanced driver assistance system (ADAS) camera.

   c.   The vehicle in claim 6 further comprises "a factory-installed second apparatus configured to receive the electrical signal." The Accused Vehicles include this second apparatus, for example, in the form of a power steering control module or a powertrain control module.

   d.   The vehicle in claim 6 further comprises "a retrofit apparatus electrically connected to the factory-installed second apparatus." In the Accused Vehicles, this retrofit apparatus includes, for example, a "Comma 2" or "Comma 3" module and other components (collectively referred to as the "comma.ai devkit" or "devkits") that are electrically connected to the factory-installed second apparatus.

   e.   Claim 6 requires that "the retrofit apparatus generates a mimicked electrical signal independently of the electrical signal generated by the factory-installed first apparatus." In

3

the Accused Vehicles, the comma.ai devkit generates mimicked electrical signals in the form of CAN messages. These CAN messages include, for example, control messages that mimic CAN messages related to the vehicle's "Adaptive Cruise Control" and "Automated Lane Centering (ALC)." For example, the mimicked CAN messages include a vehicle acceleration CAN message or equivalent message. The mimicked CAN messages are generated independently of the CAN messages generated by the factory-installed first apparatus, i.e., independently of signals generated by the vehicle's original hardware.

    f. Claim 6 requires that the "factory-installed second apparatus receives the mimicked electrical signal." In the Accused Vehicles, the factory-installed second apparatus, e.g., the power steering control module or the powertrain control module, receives the mimicked signals generated by the comma.ai devkit.

    g. Claim 18, from which claim 20 indirectly depends, requires that "the retrofit apparatus includes an electronically controlled switch to selectively separate a direct electrical connection between the factory-installed first apparatus and the factory-installed second apparatus." Claim 19, from which claim 20 depends, further defines this electronically controlled switch to be a relay. In the Accused Vehicles, the comma.ai devkit includes a relay.

    h. Claim 20 requires that "the relay is selectively controlled in response to a presence of an electrical failure." In the Accused Vehicles, the comma.ai devkit is programmed to control the relay in response to recognizing, for example, a loss of communication between components within the Comma 2 / Comma 3 module.

  16. Defendant has directly infringed and, on information and belief, is now directly infringing, literally or under the doctrine of equivalents, claim 20 of the '707 Patent by making,

using, offering to sell, or selling in the United States, or importing into the United States, one or more Accused Vehicles.

17. Further, on information and belief, Defendant has induced infringement and is now inducing infringement of claim 20 of the '707 Patent.

18. More specifically, at least since June 16, 2022, Defendant has been aware of the '707 Patent and has known that making or using Accused Vehicles infringes claim 20 of the '707 Patent.

19. Defendant actively encourages infringement by selling comma.ai devkits to others with instructions for installing and using them in automobiles and publishing online instructions and video tutorials showing how to install and use comma.ai devkits in automobiles.

20. On information and belief, customers have used Defendant's instructions to make and use Accused Vehicles as a result of Defendant's acts of inducement.

21. Further, on information and belief, Defendant has contributorily infringed and is now contributorily infringing claim 20 of the '707 Patent.

22. More specifically, at least since June 16, 2022, Defendant has been aware of the '707 Patent and has known that making or using Accused Vehicles infringes claim 20 of the '707 Patent.

23. On information and belief, customers have since that time purchased devkits, have used them to make Accused Vehicles, and have used the Accused Vehicles they made.

24. The devkit is a material part of the Accused Vehicles and has no substantial non-infringing uses.

25. As a result of Defendant's infringement of the '707 Patent, Plaintiff has suffered damages.

26. Defendant sells Accused Vehicles and/or devkits used to make Accused Vehicles.

27. Further, comma.ai collects data from Accused Vehicles and sells or offers to sell such data to third parties.

28. On information and belief, Defendant earns substantial sums from such sales.

29. Plaintiff is entitled to a money judgment in an amount adequate to compensate for Defendant's infringement since it first had notice of the '707 Patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the court.

30. Furthermore, despite Defendant's knowledge of the '707 Patent and its infringement, Defendant has, on information and belief, continued to infringe the '707 Patent.

31. Accordingly, on information and belief, Defendant's infringement has been and is willful, thus entitling Plaintiff to enhanced (treble) damages.

## Count II – Infringement of the '116 Patent

32. Plaintiff restates and incorporates by reference the foregoing allegations.

33. As noted above, the Accused Vehicles incorporate comma.ai's devkits, including the comma three devkit (the "Accused Kits").

34. The Accused Kits meet the limitation of claim 1 of the '116 Patent at least as follows:

   a. Claim 1 describes "[a] retrofit apparatus for installation in an existing vehicle." Defendant's devkits are aftermarket driver assistance kits ("retrofit apparatuses") that are installed in existing vehicles.

   b. The apparatus in claim 1 comprises "a control processor." The Accused Kit includes a module with a STM32H725 control processor.

6

    c.  The apparatus in claim 1 further comprises "a first vehicle data bus terminal for electrically connecting the retrofit apparatus to a first factory-installed apparatus." The Accused Kit includes a connector with terminals, including a first vehicle data bus terminal for electrically connecting the comma three devkit to the vehicle's factory-installed power steering control module or powertrain control module (the "first factory-installed apparatus").

    d.  The apparatus in claim 1 further comprises "a second vehicle data bus terminal for electrically connecting the retrofit apparatus to a second factory-installed apparatus." The Accused Kit includes a connector that has a second vehicle data bus terminal for electrically connecting the devkit to a factory-installed camera and/or radar sensor (the "second factory-installed apparatus").

    e.  The apparatus in claim 1 further comprises "an electromechanical relay operatively connected to and controlled by the control processor, the relay being configured to selectively connect the first vehicle data bus terminal to the second vehicle data bus terminal." The Accused Kit includes an electromechanical relay operatively connected to and controlled by the STM32H725 control processor. The relay is configured to selectively connect the first vehicle data bus terminal to the second vehicle data bus terminal in response to certain occurrences.

    f.  Claim 1 requires that "an original data bus message originating in the second factory-installed apparatus reaches the first factory-installed apparatus when the relay connects the first vehicle data bus terminal to the second vehicle data bus terminal." In "passthrough mode," the relay in the Accused Kit directly connects the vehicle's factory-installed power steering control module or powertrain control module (the "first factory-installed apparatus") to the vehicle's factory-installed camera and/or radar sensor (the "second factory-installed apparatus"). In passthrough mode, an original data bus message originating in the factory-

installed camera and/or radar sensor reaches the factory-installed power steering control module or powertrain control module.

        g.    Claim 1 requires that "the original data bus message originating in the second factory-installed apparatus does not reach the first factory-installed apparatus when the relay disconnects the first vehicle data bus terminal from the second vehicle data bus terminal." When the Accused Kit operates with its OpenPilot feature active, the relay directly disconnects the vehicle's factory-installed power steering control module or powertrain control module (the "first factory-installed apparatus") from the vehicle's factory-installed camera and/or radar sensor (the "second factory-installed apparatus"). When OpenPilot is active, an original data bus message originating in the factory-installed camera and/or radar sensor does not reach the factory-installed power steering control module or powertrain control module.

        h.    Claim 1 requires that "the retrofit apparatus transmits a mimicked data bus message to the first factory-installed apparatus." When OpenPilot is active, the Accused Kit transmits mimicked data bus messages to the factory-installed power steering control module or powertrain control module (the "first factory-installed apparatus"). For example, the mimicked data bus messages include a vehicle acceleration CAN message or equivalent message.

35.    Defendant has directly infringed and, on information and belief, is now directly infringing, literally or under the doctrine of equivalents, at least claim 1 of the '116 Patent by making, using, offering to sell, or selling in the United States, or importing into the United States, one or more Accused Kits.

36.    As a result of Defendant's infringement of the '116 Patent, Plaintiff has suffered damages.

37.    Defendant sells Accused Kits and/or vehicles incorporating Accused Kits.

38. Further, comma.ai collects data from Accused Kits and sells or offers to sell such data to third parties.

39. On information and belief, Defendant earns substantial sums from such sales.

40. Plaintiff is entitled to a money judgment in an amount adequate to compensate for Defendant's infringement since it first had notice of the '116 Patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the court.

41. Furthermore, despite Defendant's knowledge of the '116 Patent and its infringement, Defendant has, on information and belief, continued to infringe the '116 Patent.

42. Accordingly, on information and belief, Defendant's infringement has been and is willful, thus entitling Plaintiff to enhanced (treble) damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff Sucxess LLC respectfully requests that the Court rule in its favor and against Defendant comma.ai, Inc., and that the Court grant Plaintiff the following relief:

A. an adjudication that Defendant has infringed the '707 and '116 Patents;

B. an award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement of the '707 and '116 Patents and any continuing infringement through the date such judgment is entered, including pre-judgment and post-judgment interest, costs, expenses, and an accounting of all infringing acts;

C. an order requiring Defendant to pay a royalty for any continued infringement after the date judgment is entered;

D. an award of treble damages under 35 U.S.C. § 284;

  E.  any injunctive relief to which Plaintiff may be entitled; and

  F.  any and all such further relief at law or in equity that the Court may deem just and proper, including but not limited to attorneys' fees.

Dated: August 23, 2022      Respectfully submitted,

*Of Counsel:*

Maxwell Goss
Fishman Stewart PLLC
800 Tower Dr., Suite 610
Troy, Michigan 48098
Office: (248) 594-0604
mgoss@fishstewip.com

*/s/ George Pazuniak*
George Pazuniak (DE Bar 478)
O'Kelly & O'Rourke, LLC
824 N. Market St.,
Suite 1001A
Wilmington, DE 19801
D: 207-359-8576
Email: GP@del-iplaw.com

*Attorneys for Plaintiff*